## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

Laurie K.,[1]

Plaintiff,

v.

3:25-CV-411
(MAD/MJK)

Commissioner of Social Security,

Defendant.

---

Howard Olinsky, Esq., for Laurie K.
Candace Brown Casey, Special Asst. U.S. Attorney, for Defendant

Mitchell J. Katz, U.S. Magistrate Judge

To the Honorable Mae A. D'Agostino, U.S. District Judge:

## REPORT-RECOMMENDATION

Laurie K. brought this action under the Social Security Act (42 U.S.C. § 405(g)), seeking judicial review of the Social Security Commissioner's final decision denying her application for benefits. (Dkt. 1.). Laurie K. did not consent to the jurisdiction of a Magistrate Judge. Both parties filed briefs (Dkts. 15, 22, 23). And at the Court's request, both sides filed supplemental briefs (Dkts. 24, 26, 27). The Court heard oral argument on April 1 focused on the issue of remand for benefits

---

[1] This Report-Recommendation will identify the plaintiff using only her first name and last initial to protect her privacy.

1

only. Under Fed. R. Civ. P. 12(c), and in accordance with General Order 18, the Court treats these briefs as motions.

## I.    PROCEDURAL HISTORY

On April 29, 2015, Laurie K. applied for Supplemental Security Income ("SSI"), alleging disability beginning July 6, 2014. (T. 97, 183).[2] Her application was denied on September 2, 2015, and she filed a written request for a hearing with an Administrative Law Judge ("ALJ"). (T. 31). A hearing was held on November 13, 2017, and a decision finding Laurie K. not disabled was issued on January 17, 2018. *See Laurie M.K. v. Comm'r of Soc. Sec.*, 3:22-CV-0947 (GTS/DEP), 2023 WL 7004934 at *1–2 (N.D.N.Y. Sept. 1, 2023), *report and recommendation adopted*, 2023 WL 7003931 (N.D.N.Y. Oct. 24, 2023). The Appeals Council granted review, vacated the ALJ's decision, and found Laurie K. not disabled. *Id.* at *2.

Laurie K. appealed to this Court, and the Court remanded on May 15, 2020, based on a stipulation between Laurie K. and the Commissioner. *Id.* In the stipulations, both sides agreed that the ALJ

---

[2] All page references are to the Administrative Transcript ("T."), and not the page numbers assigned by the CM/ECF pagination system. All other page references are to the numbers assigned by the CM/ECF pagination system.

failed to properly analyze Laurie K.'s treating physician's opinion. *Id.* On remand, the case went before a different ALJ, and administrative hearings were held on November 16, 2021, and May 9, 2022. *Id.* On July 7, 2022, the ALJ issued a decision finding Laurie K. not disabled. *Id.*

Laurie K. again appealed to this Court. *Id.* at *3. The Court conducted oral argument by telephone and reversed the ALJ's decision based on the ALJ's failure to properly analyze the opinion of treating physician Dr. Carr. *Id.* The Court issued an order in which it directed the Commissioner to consider the assessment of Laurie K.'s treating physician Dr. Carr. *See Id.*

On remand, the case went before a different ALJ, and on November 20, 2024, ALJ Gretchen Greisler held a hearing. (T. 2814–48). On January 31, 2025, ALJ Greisler issued an unfavorable decision. (T. 2774–2800). Laurie K. again appealed to this Court. (Dkt. 1).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standards

To be considered disabled, a claimant seeking DIB or SSI benefits must establish that they are "unable to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A). Additionally, the claimant's

> physical or mental impairment or impairments [must be] of such severity that they are not only unable to do their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which they live, or whether a specific job vacancy exists for them, or whether they would be hired if they applied for work.

42 U.S.C. § 1382c(a)(3)(B) (cleaned up).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 (for DIB) and 416.920 (for SSI), to evaluate disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [they are] not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [their] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [them] disabled without considering vocational factors such as age, education, and work experience . . . .

4

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [they have] the residual functional capacity to perform [their] past work. Finally, if the claimant is unable to perform [their] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Berry*, 675 F.2d at 467). The claimant has the burden of establishing disability at the first four steps. *Berry*, 675 F.2d at 467. If the claimant establishes that their impairment prevents them from performing their past work, then the burden shifts to the Commissioner to prove the fifth and final step. *Id.*

## B.    Scope of Review

When reviewing a final decision of the Commissioner, courts must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Id.* at 417; *see also Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more

than a scintilla" of evidence scattered throughout the administrative record. *Id.* Yet this standard is a very deferential standard of review "— even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "[T]o determine on appeal whether an ALJ's findings are supported by substantial evidence, reviewing courts consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). But reviewing courts may not substitute their interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id.*; *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

ALJs need not explicitly analyze every piece of conflicting evidence in the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *see also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]"). But ALJs cannot "'pick and choose' evidence in the record that supports [their] conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *see also Fuller v.*

*Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

The record includes Laurie K's medical treatment records, which the parties are familiar with. The Court will refer to the pertinent records and Laurie K.'s hearing testimony in its analysis as appropriate.

## IV.   THE ALJ'S DECISION

At Step One of the five-step sequential evaluation, ALJ Greisler determined that Laurie K. had not engaged in substantial gainful activity since September 1, 2022. (T. 2777).

At Step Two, ALJ Greisler found that Laurie K. had the following severe impairments: obesity, anxiety disorder, depressive disorder, personality disorder, and borderline personality disorder. (*Id.*). The ALJ further found that Laurie K. has the following nonsevere impairments: left ankle pain, right elbow pain, left elbow pain, left wrist pain, Lyme disease, seizure disorder, acid reflux, and low back pain. (T. 2777–2779).

7

At Step Three, the ALJ determined that Karen's impairments neither meet nor medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 2780).

Next, the ALJ discussed the "paragraph B" criteria. (T. 2780–2781). "To satisfy the paragraph B criteria," mental impairments "must result in one extreme limitation or two marked limitations in a broad area of functioning." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b) (cleaned up). The four broad areas of mental functioning are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting and managing oneself. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C). ALJ Greisler found that Laurie K. did not meet the "paragraph B" criteria because she had only mild limitations in understanding, remembering, or applying information; moderate no limitations in interacting with others; and moderate to marked limitations in concentrating, persisting, or maintaining pace. (T. 2780–2781). ALJ Greisler noted Laurie K. had "limited" insight and "questionable judgment." (T. 2781). ALJ Greisler ultimately found that Laurie K. does not meet the "Paragraph B" criteria. (*Id.*).

8

The ALJ also considered the "paragraph C" criteria. T. 2782). The "paragraph C" criteria require a documented medical history of the existence of the disorder over a period of at least two years, with evidence of both (a) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing nd that diminishes the symptoms and signs of the mental disorder; and (b) marginal adjustment, that is, minimal capacity to adapt to changes in environment or to demands that are not already part of daily life. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(c). ALJ Greisler found that the "paragraph C" criteria were not met. (*Id.*).

The ALJ then determined that Laurie K. had the residual functional capacity ("RFC") to perform:

> the full range of work at all exertional levels. She can perform simple tasks at a consistent goal-oriented pace, but not at a fast, production rate pace, such as would be experienced in assembly line type of work. She can engage in occasional interaction with supervisors and coworkers to perform tasks that do not require sharing of job tasks or working in close coordination with others. She cannot interact with the public. She can make simpole decisions directly related to her work and tolerate occasional work changes.

(T. 2782).

9

When crafting the RFC, ALJ Greisler stated that she considered all Laurie K.'s symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (*Id.*). ALJ Greisler added that she fully considered opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927." (*Id.*).

At Step Four, the ALJ found that Laurie K. had no past relevant work (T. 2796). The ALJ determined that Laurie K. is in the "younger individual" category, has at least a high school education, and that "transferability of job skills is not an issue." (T 2796–2797) (cleaned up).

At Step Five, using the Medical Vocational Guidelines as a "framework," and the VE's testimony, the ALJ found that Karen was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (T. 2797). To end, the ALJ found that Karen was not disabled. (T. 2799).

## V.   ISSUES IN CONTENTION

Both sides agree that remand is appropriate. Only one question remains: whether this case should be remanded solely for the

calculation and award of benefits or remanded for further administrative proceedings.[3]

Laurie K. seeks remand solely for the calculation of benefits. *See generally* (Pl.'s Br.); *see also* (Pl.'s Supp. Br. at pp. 2–5). In support, she contends that the record is sufficiently developed; that the record shows persuasive proof of disability; and that she has suffered excessive delay in the adjudication of her claim. *See* (Pl.'s Supp. Br. at pp. 2–5).

The Commissioner responds that remand solely for the calculation of benefits is inappropriate. (Def.'s Supp. Br. at p. 1). The Commissioner argues that Laurie K. is not disabled based on the current record, and that the lengthy procedural history of her case is not enough to justify remand solely for the calculation of benefits. (Def.'s Supp. Br. at pp. 1, 3–4). As explained below, the District Court should remand solely for the calculation of benefits.

## VI.   DISCUSSION

The District Court should remand solely for the calculation of benefits for three reasons. First, the record is adequately developed.

---

[3] *See, generally* (Laurie K.'s Brief ("Pl.'s Br.")  (Dkt. 15)); (Laurie K.'s Reply Brief ("Rep. Br.") (Dkt. 23); (Laurie K's Supplemental Brief ("Pl.'s Supp. Br.") (Dkt. 26); (Defendant's Brief ("Def Br.") (Dkt. 22); (Defendant's Supplemental Brief ("Def.'s Supp. Br.") (Dkt. 27)).

Second, the record shows persuasive proof of disability. And third, Laurie K.'s case has suffered excessive delay. For those reasons, the Court recommends remand solely for the calculation and award of benefits.

### A. The record is sufficiently developed, shows persuasive proof of disability, and that this case has already experienced excessive delay.

The Court recommends remand solely for the calculation of benefits because the record is adequately developed and shows persuasive proof of disability. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980) ("we have reversed and ordered that benefits be paid when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose"). In addition, this case has already faced excessive delay. For these reasons, the Court recommends that the District Court remand this case solely for the calculation of benefits.

When reviewing social security cases, district courts can affirm, modify, or reverse (with or without remand) a final decision of the Commissioner. 42 U.S.C. § 405(g). Remand solely for the calculation of benefits is proper only when "further development of the record

12

would serve no purpose." S*ee Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999). Further development of the record serves no purpose where there is "persuasive evidence of a total disability." *Id.* Persuasive evidence of a disability exists when the record unequivocally demonstrates that the claimant is disabled. *See Brian D. v. Comm'r of Soc. Sec.*, No. 3:21-CV-1368 (CFH), 2023 WL 1765429 at *12 (N.D.N.Y. Feb. 3, 2023). Persuasive evidence includes evidence of an "infinitesimal likelihood of employment" or lack of evidence to support a finding that the claimant could perform "substantial gainful work which [is] available in the national economy." *Id.* While not dispositive, excessive delay can counsel in favor of remand solely for the calculation of benefits. *See, e.g., McClain v. Barnhart,* 299 F. Supp. 2d 309, 330 (S.D.N.Y. 2004) ("The lengthy [nine-year] delay in the resolution of [plaintiff's] claim further persuades [the court] that the case is properly disposed by remanding solely for the calculation of benefits.").

1. **The record is sufficiently complete and further record development is unnecessary.**

The current record is sufficiently complete. When deciding whether the record is complete, courts consider whether "the

administrative record contains gaps," which would warrant further development of the record. *Butts v. Barnhart*, 388 F.3d 377, 385–386. That is: when "further findings would so plainly help to assure the proper disposition of [the] claim, . . . remand [for further proceedings] is particularly appropriate." *Id*. But "where [there is] no apparent basis to conclude that a more complete record might support the Commissioner's decision, [the Second Circuit has] opted simply to remand for a calculation of benefits." *Id*.

There is no apparent basis to conclude that a more complete record would support the Commissioner's decision. For starters, the record stands at almost 3500 pages. *See, e.g., Sandra S. v. Comm'r of Soc. Sec.*, 5:24-cv- 01116 (AMN/ML), 2025 WL 4101468, at *12 (N.D.N.Y. Dec 23, 2025) (holding that the record was "sufficiently complete" at 2810 pages and included treating source notes and opinions from 2011 through 2024, reports from examining and non-examining consultants, and the opinion of an independent medical expert) (cleaned up). In addition, Laurie K. provided updated medical records at her most recent hearing. *See* (T. 2814) (listing various progress notes written and submitted after this Court's prior remand

14

order); *see also Sandra S.*, 2025 WL 4101468, at *12 (indicating that a claimant providing updated medical records before a hearing helps ensure that the record is sufficiently complete). In fact, the Commissioner implicitly concedes that the record does not require further development. The Commissioner only asks the District Court for "remand" so the agency may "further consider[] . . . Dr. Carr's medical opinion." (Def. Br. at 5–6). That is a much different request than further development of the record.

What's more, the record does not contain any gaps. The record currently contains reports from emergency room visits, treating physician appointments, consultative examinations, and mental and physical RFC assessments. *See* (T. 2806–2813) (listing more than 50 reports created between 2014 and 2024). The record spans more than a decade and the earliest medical note described that Laurie K. suffered a seizure and was taken to the emergency room by ambulance. (T. 1539) (2014 note). More recent records describe Laurie K. as "markedly limited" in her ability to maintain appropriate behavior. (T. 3418) (2023 medical note). And at the most recent hearing ALJ Greisler herself noted that the prior ALJ went to great lengths to get medical notes; yet

15

ALJs "can't really force [physicians]" to "provide [] notes." (T. 2817).

Considering the length and breadth of the available medical records—and because the Commissioner only seeks remand so that an ALJ may be given a fourth chance to properly analyze an opinion from Laurie K.'s treating physician—"there is no reason to believe that, upon remand, the record that has been presented to this Court could be made any more complete." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d. Cir. 1999); *see Balsamo v. Chater*, 142 F.3d 75, 80–81 (2d Cir. 1998) (remanding solely for calculation of benefits because the ALJ's only mistake was improperly weighing a treating physician's opinion on an otherwise complete record).

To close, additional evidence would not support the Commissioner's position that Laurie K. is not disabled. And there are no gaps in the record. In consequence, remand for further development of the record is unnecessary.

## 2. The adequately developed record shows that Laurie K. is disabled.

The record shows that Laurie K.'s impairments render her disabled. Specifically, treating physician Dr. Carr's reports and treating therapist Holland's reports show that Laurie K.'s absenteeism and

16

anger management issues are disabling impairments. But the Commissioner—for the third time—has failed to properly apply the treating physician rule. Had ALJ Greisler properly applied the treating physician rule, Laurie K. would have been found disabled. Therefore, the Court recommends that the District Court find Laurie K. disabled and remand this case for calculation of benefits.

For claims filed before March 27, 2017, the treating physician rule applies. Under that rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (cleaned up). If "a treating physician's opinion is 'not consistent with other substantial evidence in the record, such as the opinions of other medical experts[,]' however, the hearing officer need not give the treating source opinion controlling weight." *Id.* (citation omitted). But if an ALJ refuses to afford a treating physician's opinion "controlling weight," they must provide good reasons—"reasons supported by substantial evidence in the record—for the weight [they]

17

afford[] the treating source's medical opinion." *Schillo v. Saul*, 31 F.4th 64, 75 (2d Cir. 2022) (citation omitted).

Both sides agree that ALJ Greisler failed to properly weigh treating physician Dr. Carr's medical opinions. While the Court would normally remand so that the ALJ could properly weigh the treating physician's opinion, this is the third time that remand has been required because an ALJ failed to properly evaluate a treating physician's opinion. *See, e.g.*, *Dommes v. Colvin*, 225 F. Supp. 3d 113, 124 (N.D.N.Y 2016) (remanding solely for the calculation and award of benefits because the ALJ had again improperly analyzed the treating physician's opinion). Worse yet, this Court has previously rebuked the Commissioner for ignoring "ostensibly disabling limitations expressed within Dr. Carr's opinion, . . ." and remanded because "a more appropriate assessment of Dr. Carr's opinion could well have resulted in a finding that plaintiff is disabled." *Laurie M.K.*, 2023 WL 7004934 at *9. In similar circumstances, this Court has not hesitated to remand solely for the calculation of benefits. *See, e.g.*, *Mortise v. Astrue*, 713 F. Supp. 2d 111, 128 (N.D.N.Y. 2010) (remanding solely for calculation of benefits where the ALJ had repeatedly erred in applying the treating

18

physician rule and further development of the record would prove pointless).

Had ALJ Greisler followed the treating physician rule, Laurie K. would have been found disabled due absenteeism. *See Jennifer D. v. Saul*, No. 3:19-CV-437 (NAM), 2020 WL 2553102, at *7 (N.D.N.Y. May 20, 2020) (remanding for calculation of benefits because "once proper weight is given to the restrictive opinion of Plaintiff's treating physician . . . a finding of disability is inevitable"). In particular, treating physician Dr. Carr noted that Laurie K. would be absent at least three days per month due to her conditions. (T. 1878). And this Court, in its prior remand order, noted that absenteeism is of particular concern in Laurie K.'s case. *See Laurie M.K.*, 2023 WL 7004934 at *6 (citing more than 65 treating notes indicating that Laurie K. has a propensity for missing appointments without explanation). Absenteeism points to disability here because, while testifying in Laurie K.'s most recent hearing, a Vocational Expert noted that a claimant being absent more than 10% of the time would "rule out all employment." (T. 2842). And the Vocational Expert added that more than one unscheduled absence per month—including being late to or leaving early from work—would

preclude all employment. (T. 2842).

In addition to disabling absenteeism limitations, had ALJ Greisler followed the treating physician rule, Laurie K.'s social limitations would have rendered her disabled. As this Court previously noted, treating physician Dr. Carr reported that Laurie K. presented with an inability to "deal with the public, use judgment, interact with supervisors, deal with stress, function independently, maintain attention and concentration, behave in an emotionally stable manner, and relate predictably in social situations." *Laurie M.K.*, 2023 WL 7004934 at *5 (cleaned up). And more tellingly, a review of Dr. Carr's opinions, alongside other evidence in the record, shows that Laurie K. has poor anger management skills which have worsened since her 2015 application for disability.

For example, a report from February 2015 described Laurie K. as having a "history of suicide attempts," a "very aggressive attitude" for several weeks, and "dreams about fighting," (T. 320). Later, Laurie K. was forced to establish care with a new physician because she had been "kicked out" of her previous provider's office due to "relationship issues." (T. 399). Also in 2015, Laurie K. was reported to have been quarrelling

20

with treating physician Dr. Carr and was "very unhappy and frustrated." (T. 407).

In 2016, treating physician Carr noted that Laurie K. had been constantly fighting with her abusive partner and had requested medication to control her anger towards him. (T. 595). In addition, Laurie K.'s treating therapist noted that she presented with homicidal ideation—but lacked intent or a plan. (T. 2189).

By 2017, Laurie K.'s anger management showed signs of worsening. For instance, a medical report shows that she got into two separate fist fights with her neighbors. (T. 2212). The same report also noted that she got into an argument at the post office, which required police intervention. (*Id.*). At an ALJ hearing that same year, Laurie K. stated that she "loses her attitude" and that she tries "to control it and then it's just like she snaps." (T. 75) (cleaned up). Laurie K. also reported that she "had been getting very aggressive" towards Dr. Carr and her treating therapist Holland. (T. 79).

In 2018, Laurie K. had an argument with a 17-year-old that almost turned physical; but her significant other intervened, and the police were called. (T. 2291). Around this same time, Laurie K. had a

21

confrontation at Walmart that resulted in the police being called. (*Id.*).

Laurie K. also presented to her treating therapist with bruised knuckles

after an argument between her significant other and her son. (T. 2295).

In early 2019, Laurie K. was evicted from her home after a

physical altercation with her landlord. (T. 2364). Medical reports also

indicate that she was showing suicidal ideation without any intent or

plan. (T. 2365). And later in 2019, Laurie K. was arrested in Walmart

and charged with third degree assault after she got into a fight. (T.

2402). She reported that she "cannot control her anger when people

make comments about her family or family members"—and "[s]he

immediately gets aggressive." (*Id.*).

Throughout 2020, Laurie K. showed issues with poor frustration

tolerance and "severe" mood swings. (T. 2436, 2448). In early 2021,

Laurie K. got into a physical altercation with a 19-year-old. (T. 2491).

Later that same year, Laurie "hit" a woman who refused to clean up

after her dog. (T. 2503). A medical report, created the day before Laurie

K.'s 2021 ALJ hearing, indicated that she was afraid to leave her home

for fear of getting into a fight. (T. 2508). The report also noted that

Laurie K. had recently attacked a woman who yelled a racist comment

at her friend. (*Id.*).

By 2023, medical records indicated that Laurie K. has "mood disorders, mood swings, anxiety, depression, and borderline personality disorder," and that she "[g]ets aggressive." (T. 3372). And in 2024, a medical report indicated that Laurie K. had "no showed" two appointments and had "a history of conflict with others." (T. 3422). And at Laurie K.'s most recent ALJ hearing, her attorney asked the Vocational Expert whether any unskilled employment existed that would involve total isolation. (T. 2843). The Vocational Expert responded: "there would be no employment where the person is completely isolated that's unskilled." (T. 2843–2844).

But even in the face of Laurie K.'s history of absenteeism and anger, ALJ Greisler flouted treating physician Dr. Carr's opinions and found Laurie K. capable of performing "the full range of work." (T. 2782). ALJ Greisler reasoned that treating physician's opinions were contradicted by the record—so she "assigned little weight to the opinions and remarks of Dr. Carr." (T. 2788). But merely mentioning that a treating physicians "opinions and remarks" are contradicted by the record does not constitute "good reasons" for rejecting a treating

23

physician's opinion. *See Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). Indeed, if an ALJ refuses to find a treating physician's opinion controlling, they must expressly analyze the "length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship"; the "relevant evidence,  particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues. *Id.* (cleaned up). And ALJ Greisler's failure to analyze any of the *Burgess* factors means that she failed to provide "good reasons" for rejecting treating physician Dr. Carr's opinion—which is error. *See Burgess*, 537 F.3d at 129; *see also Schaal v. Apfel,* 134 F.3d 496, 505 (2d Cir. 1998) (holding that the "Commissioner's failure to provide 'good reasons' for apparently affording no weight to the opinion of plaintiff's treating physician constituted legal error").

ALJ Greisler's error was not harmless. Had she properly given treating physician Dr. Carr's opinion controlling weight, ALJ Greisler would have at minimum provided additional absenteeism limitations— which would have rendered Laurie K. disabled. *See Greek v. Colvin*, 802

F.3d 370, 376 (2d Cir. 2015) (holding that because the VE stated that the claimant's absenteeism limitations would preclude them from work, and the ALJ failed to properly analyze the treating physician's opinion, the ALJ's error was not harmless).

At this point, ALJ Greisler is the third ALJ to fail to properly follow the treating physician rule in Laurie K.'s case. *See Steficek v. Barnhart*, 462 F. Supp. 3d 415, 421 (W.D.N.Y. 2006) (remanding for the calculation of benefits because "[t]he Commissioner has already had one opportunity to correct that errors that occurred in connection with the first hearing, and has failed to do so; in fact, the ALJ committed the exact same errors the second time around."). Taken together, ALJ Greisler's error; evidence showing Laurie K.'s absenteeism and social issues; and the Vocational Examiner's testimony suggesting that Laurie K.'s absenteeism would preclude any work convinces the Court that Laurie K. is disabled. Therefore, the District Court should find that the record shows persuasive proof of Laurie K.'s disability.

* * *

Ultimately, "[w]here application of the correct legal principles"—like properly following the treating physician rule—"to the record could

lead to only one conclusion, there is no need to require agency reconsideration." *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir. 1987) (cleaned up). And considering the opinions of treating physician Dr. Carr, and the rest of the record, the Court finds that the evidence "could lead to only one conclusion"—that Laurie K. is disabled. Therefore, the Court recommends remand solely for the calculation of benefits.

### 3. This case's nearly-11-year delay further supports the District Court remanding the case for calculation of benefits.

In addition to the record being adequately developed and showing persuasive proof of disability, remand solely for the calculation of benefits is appropriate because this case has faced excessive delay. Excessive delay cannot be the only reason that a court remands a case solely for the calculation of benefits. But where, as here, persuasive proof of disability has been shown, then excessive delay can factor into the decision to remand solely for the calculation of benefits. Therefore, the Court recommends remand solely for the calculation of benefits.

Remand for calculation of benefits is appropriate where, coupled with persuasive proof of disability, the claimant's case is marked by substantial delay. *See, e.g., Archer v. Astrue,* 910 F. Supp. 2d 411, 428

(N.D.N.Y. 2012) ("Courts are directed to avoid contributing any further to the delay of the determination of a claimant's application by remanding for further administrative proceedings when such an instruction would prove unnecessary.") (cleaned up).

This case has been excessively delayed. Laurie K. initially applied for benefits more than a decade ago. (T. 97, 183). She has attended at least five administrative hearings over the same period. *See* (T. 2814–2848). Three different ALJs have issued unfavorable decisions—each of which has been remanded because the ALJ failed to properly apply the treating physician rule. *See generally* (Def.'s Br.); (Def.'s Supp. Br.). In fact, the Commissioner has twice requested remand to correct errors involving an ALJ failing to properly apply the treating physician rule. *See generally* (Def.'s Br.); (Def.'s Supp. Br.). Considering the length of Laurie K.'s proceedings, the District Court should remand solely for the calculation of benefits. *See Mortise*, 713 F. Supp. 2d at 128 (remanding for calculation of benefits because the ALJ had repeatedly erred in applying the treating physician rule and further development of the record would only cause further unnecessary delay).

* * *

The Court recommends remand solely for the calculation of benefits. Laurie K. has shown that the record is sufficiently complete and that she is disabled. *See Soto v. Barnhart*, 242 F. Supp. 2d 251, 254 (W.D.N.Y. 2003) (remanding solely for calculation of benefits where the ALJ's error was in interpreting and weighing treating physician evidence, not in failing to develop a complete record). And further, this case has faced excessive delay. *see McClain*, 299 F. Supp. 2d at 330-31 (ordering remand for calculation of benefits in light of a nine-year delay). In consequence, the Court recommends remand solely for the calculation of benefits.

## VII. CONCLUSION

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED** that Laurie K.'s motion for judgment on the pleadings (Dkt. 15) be **GRANTED**; and it is further

**RECOMMENDED**, that the Commissioner's motion for judgment on the pleadings (Dkt. 22) be **DENIED**; and it is further

**RECOMMENDED**, that the ALJ's decision be **REVERSED AND REMANDED SOLELY FOR THE CALCULATION OF BENEFITS**.

28

In accordance with 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (*per curiam*)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: April 21, 2026

_____

Hon. Mitchell J. Katz
U.S. Magistrate Judge